```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

---

ERIC D. HILL,

                                Petitioner,

     -vs-

MARK L. BRADT,

                                Respondent.

**No. 1:13-CV-00267 (MAT)**
**DECISION AND ORDER**

---

## I. Introduction

Proceeding *pro se*, Eric D. Hill ("petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being detained in respondent's custody in violation of his federal constitutional rights. Petitioner is incarcerated pursuant to a judgment entered on July 19, 2007, in Monroe County Court (Keenan, J.), following a jury verdict convicting him of two counts of murder in the second degree (N.Y. Penal Law § 125.25(1)).

## II. Factual Background and Procedural History

In 2006, petitioner was charged by indictment with two counts of murder in the second degree (N.Y. Penal Law § 125.25(1)), in connection with the October 12, 2005 double homicide of Marvin Joseph and Marvin Crawford. Petitioner was tried on these charges at a jury trial which commenced June 19, 2007, before Monroe County Judge Richard A. Keenan. At trial, eyewitness Valeria Huff testified that on the evening of October 11, 2005, she saw petitioner at a Rochester bar, the Garage Door, with his friend "D.B." and two women. Huff testified that she knew petitioner, also

known as "Southboy," from "the streets" and that he had gold teeth, which she observed on the evening in question. T. 328-29.[1]

At the bar, Huff observed Joseph (known to Huff as "Fleet") and Crawford get into an argument with petitioner and D.B., apparently stemming from Crawford's attempt to flirt with the two women accompanying petitioner and D.B. After the argument ended, Huff witnessed petitioner enter a van and block Joseph's car from leaving the parking lot. Petitioner then ran toward Joseph's car holding a large silver gun. Huff heard five or six shots fired and saw petitioner run back to his van and drive away. Huff identified Joseph and Crawford from morgue photographs. Police processed the scene and recovered six spent .40 caliber gun casings and a piece of chewing gum in the area of Joseph's car. The gum later tested positive for the DNA of petitioner's wife. Subsequent investigation revealed petitioner as a suspect, but petitioner had fled the area. Petitioner was eventually apprehended in Enterprise, Alabama, on November 30, 2006.

The jury convicted petitioner on both charges. On July 19, 2007, petitioner was sentenced to two consecutive prison terms of 25 years to life. Petitioner filed a direct appeal, in which he argued in a counseled brief that he was denied a fair trial due to prosecutorial misconduct, that the verdict was against the weight

---

[1] References to T. are to the 674-page jury trial transcript, which took place June 18-21, 2007. All other proceedings will be referenced by date.

of the evidence, and that his trial counsel was ineffective. Petitioner also filed a *pro se* supplemental brief and appendix, in which he claimed that he was denied his right to be present at all stages of trial and that his trial was unfair because the prosecutor introduced morgue photographs of both victims. He also argued that his trial counsel was ineffective for failing to object to the admission of one of the photographs of the victims.

In a March 25, 2011 opinion, the New York State Supreme Court, Appellate Division, Fourth Department affirmed the judgment of conviction. See People v. Hill, 82 A.D.3d 1715 (4th Dep't 2011), lv denied 17 N.Y.3d 806. The court addressed all of defendant's claims on the merits, rejecting each in turn. The New York State Court of Appeals denied leave to appeal. See id.

On March 1, 2012, petitioner filed a *pro se* motion pursuant to New York Criminal Procedure Law § 440.10, arguing ineffective assistance of counsel and prosecutorial misconduct. The District Attorney opposed the motion, and the motion was denied by the Monroe County Court "for the reasons set forth in the People's response." Doc. 8-1 at 316. The Appellate Division denied leave to appeal. Doc. 8-1 at 348-49.

**D.   The Federal Habeas Proceeding**

This timely habeas petition followed, in which petitioner claims that (1) trial counsel was ineffective for failing to: (a) effectively cross-examine identification witness Valeria Huff; (b) interview and call certain witnesses; (c) request a jury charge

3

to the effect that petitioner's flight to Alabama following the shooting was of slight probative value; (d) object to the prosecutor's allegedly improper summation remarks; and (e) challenge the admissibility of DNA evidence; (2) the prosecutor committed misconduct (a) by making certain comments on summation and (b) by presenting perjured testimony; (3) petitioner's right to be present at all stages of trial was violated due to a certain ex parte communication between the prosecutor and the trial judge; and (4) petitioner's right to a fair trial was violated by the admission of two morgue photographs of the victims. Respondent concedes that all of petitioner's claims are exhausted, but argues that each fails for the reasons set out in its brief.

**III. Standard of Review**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to Hill's petition, which was filed in 2013. AEDPA "revised the conditions under which federal courts may grant habeas relief to a person in state custody." <u>Kruelski v. Connecticut Superior Court for Judicial Dist. of Danbury</u>, 316 F.3d 103, 106 (2d Cir.2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may grant a writ of habeas corpus under 28 U.S.C. § 2254 only if the state court's adjudication of the petitioner's claim on the merits ruling is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or involved an "unreasonable determination of the

facts" in light of the evidence presented, 28 U.S.C. § 2254(d)(2). The Second Circuit has stated that "it is often appropriate in considering a habeas petition under the AEDPA for the federal court to go through two steps: first, the court determines what the correct interpretation of Supreme Court precedent is; second, if the state court's understanding or application of that precedent is determined to be erroneous, the federal court must still ask whether that error was a reasonable one." Kruelski, 316 F.3d at 106.

**IV. Grounds Asserted in the Petition**

   **A.   Ineffective Assistance of Counsel (Ground One)**

Petitioner claims that trial counsel was ineffective for failing to: (1) effectively cross-examine identification witness Valeria Huff; (2) interview and call certain witnesses; (3) request a jury charge to the effect that petitioner's flight to Alabama following the shooting was of slight probative value; (4) object to the prosecutor's allegedly improper summation remarks; and (5) challenge the admissibility of DNA evidence.

To establish ineffective assistance of counsel, a defendant first must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and second, that "there is a reasonable probability that, absent the errors [by counsel], the fact finder would have had a reasonable doubt respecting guilt." Strickland v. Washington, 466 U.S. 668, 687, 695 (1984). As discussed further

5

below, the Court finds that all of Hill's theories in support of his ineffective assistance of trial counsel claim fail under the "highly deferential" standard laid out in Strickland. Id. at 689.

The Court also notes that, under Strickland, it is required to consider alleged errors by counsel "in the aggregate." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001). In this case, counsel actively participated in all stages of the trial, presenting a cogent and capable defense by making appropriate motions and objections, performing effective cross-examination of witnesses, and presenting reasonable opening and closing arguments. The record thus establishes that, in the aggregate, trial counsel's representation was effective. See Harrington v. Richter, 562 U.S. 86, 90 (2011) ("[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy."); United States v. DiPaolo, 804 F.2d 225, 234-35 (2d Cir. 1986) (holding that defendants were not denied effective assistance of counsel where counsel appeared well-prepared and demonstrated good understanding of the facts and legal principles involved in case).

### 1. Cross-Examination of Huff

Petitioner argues that counsel's cross-examination of Huff was so deficient that it denied him a fair trial. A reading of the cross-examination (T. 355-62), however, belies this contention. Defense counsel's lines of questioning followed logical strategies, such as attempting to establish that Huff could have confused

petitioner with his friend, D.B., and attempting (but failing) to elicit testimony that D.B. may have been armed. The fact that defense counsel's questioning may not have elicited the answers that would have been most beneficial to petitioner's case does not mean that counsel's questioning amounted to ineffective assistance, but rather speaks to the strength of the evidence against petitioner in this case. Moreover, "[d]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature." United States v. Nersesian, 824 F.2d 1294, 1322 (2d Cir. 1987). "As such, counsel's conduct of cross-examination generally will not be second-guessed by reviewing courts." Seda v. Conway, 774 F. Supp. 2d 534, 541 (W.D.N.Y. 2011). The Court declines to do so here.

### 2.  Failure to Interview and Call Certain Witnesses

Petitioner contends that counsel was ineffective for failing to interview and call three witnesses who were present at the bar on the night in question. However, as respondent points out, petitioner's defense counsel explained in a letter (which was attached to petitioner's CPL 440.10 motion) that his decision not to call these witnesses was strategic. In that letter, defense counsel informed petitioner that he chose not to call the witnesses "as a matter of trial strategy" because he "was fearful that any one of those witnesses could have made an in court identification, at the very least, which would place [petitioner] at the location of the shooting on the date of the shooting." Doc. 8-1 at 223.

As with decisions regarding cross-examination, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." Nersesian, 824 F.3d at 1321. There is no reason to believe, especially considering the record evidence of defense counsel's trial strategy, that these witnesses would have helped petitioner's defense so substantially that the failure to call them constituted ineffective assistance. See, e.g., Rogers v. Chappius, 2013 WL 1825505, at *12 (W.D.N.Y. Apr. 30, 2013) (noting that counsel was not ineffective for failing to call witnesses because petitioner presented no supporting evidence that they would offer exonerating testimony, counsel's failure to call them was a strategic decision, and there was no reasonable probability that their testimony would have changed the outcome of the case).

### 3.   Jury Charge Regarding Flight

Petitioner contends that counsel was ineffective for failing to request a jury charge to the effect that petitioner's flight to Alabama did not constitute highly probative evidence of consciousness of guilt. "As courts in this circuit have observed, a flight instruction, while pointing out to the jury the limited probative value of flight evidence, [also reveals to the jury that flight can be considered] as evidence of the defendant's own consciousness of guilt." Swaby v. People, 2014 WL 1347204, *7 (E.D.N.Y. Mar. 31, 2014), aff'd sub nom. Swaby v. New York, 2015 WL

8

3479633 (2d Cir. June 3, 2015) (internal quotation marks omitted) (quoting Garcia v. Graham, 2012 WL 2921624, *10 (W.D.N.Y. July 17, 2012)) (also citing Thompson v. Lemke, 2009 WL 4110290, *12 (E.D.N.Y. Nov. 23, 2009); Robinson v. Keane, 1999 WL 459811, *3 (S.D.N.Y. June 29, 1999)). In this case, counsel's decision not to request the charge is amply explained by a strategy of avoiding "disclosing to the jury the fact that flight evidence can be probative, albeit only slightly, of a defendant's guilty conscience." Id.

### 4. Failure to Object to Prosecutor's Summation Remarks

Petitioner claims that certain remarks by the prosecutor on summation constituted misconduct, including the prosecutor's highlighting Huff's testimony that she was initially afraid to come forward and speak to police about what she witnessed, and remarks to the effect that a verdict other than guilty would be illogical. On direct appeal, the Appellate Division found that the "alleged instances of prosecutorial misconduct were 'either a fair response to defense counsel's summation or fair comment on the evidence.'" Hill, 82 A.D.3d at 1715 (quoting People v Anderson, 52 A.D.3d 1320, 1321 (4th Dep't 2008), lv denied 11 N.Y.3d 733).

The relevant question in this case is whether "the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986). Generally, inappropriate prosecutorial comments, standing alone, are insufficient to reverse

a conviction. United States v. Young, 470 U.S. 1, 11 (1985). Rather, the reviewing court must assess the impact of the improprieties on the fairness of the trial as a whole. Id.; see also Smith v. Phillips, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). The comments made by the prosecutor at petitioner's trial, considered either alone or in the context of the entire trial, amounted to fair comment on the evidence, as the Appellate Division found. Thus, the comments did not constitute misconduct and therefore could not render the trial fundamentally unfair.

### 5. Failure to Challenge DNA Evidence

Petitioner claims that counsel was ineffective for failing to object to DNA evidence from his wife, Lakeesha Hill. As discussed above, a piece of chewing gum recovered from the scene tested positive for Ms. Hill's DNA. Petitioner has not, and cannot, put forth precedent to suggest that he has standing to challenge the admissibility of his wife's DNA, found on an abandoned piece of chewing gum at the scene. In response to petitioner's CPL 440.10 motion, the District Attorney argued that petitioner had no standing to challenge this evidence, and that therefore counsel was not ineffective for failing to argue a motion that had little chance of success. Doc. 8-1 at 247 (citing People v. Caban, 5 N.Y.3d 143, 152 (2005)). The Monroe County Court denied petitioner's motion based on the reasons set forth by the District

Attorney, and the Appellate Division denied leave to appeal. This decision did not constitute an unreasonable application of applicable Supreme Court precedent, which holds that a defendant has standing to challenge a search only where he has a "legitimate expectation of privacy in the invaded place." See Rakas v. Illinois, 439 U.S. 128, 143 (1978); see also United States v. Levasseur, 816 F.2d 37, 44 (2d Cir. 1987) ("[A] warrantless search or seizure of abandoned property does not violate the fourth amendment.") (citing Abel v. United States, 362 U.S. 217, 240-41 (1960)).

Petitioner's related argument that counsel should have challenged the DNA evidence based on chain of custody also fails. Again, the Monroe County Court denied the motion based on the District Attorney's reasoning. The District Attorney argued that this claim arose out of issues apparent from the record yet not raised on direct appeal, in contravention of CPL 440.10(2)(c). This ground for denial of petitioner's motion constitutes a procedural bar to habeas relief because it is an adequate and independent state law ground. See, e.g., Acevedo v. Lempke, 2012 WL 360276, *12 (S.D.N.Y. Feb. 3, 2012 ("A state court's rejection of a motion to vacate pursuant to 440.10(2)(c) is an adequate and independent state ground sufficient to preclude review of the claim by way of a writ of habeas corpus.").

**B.   Prosecutorial Misconduct (Ground Two)**

**1. Summation Remarks**

As discussed above, petitioner contends that the prosecutor committed misconduct with various remarks made on closing. Specifically, petitioner argues that the prosecutor's comments regarding Huff's testimony that she was initially afraid to come forward, the implication that other witnesses may have been afraid as well, and the prosecutor's suggestion that a not guilty verdict would be illogical, constituted misconduct. Prior to finding the prosecutorial misconduct claim without merit, the Appellate Division expressly found that this claim was not preserved for review under New York's contemporaneous objection rule, CPL 470.05(2). Hill, 82 A.D.3d at 1715.

Because the Appellate Division relied on a state procedural rule to reject petitioner's prosecutorial misconduct argument, the claim is precluded from habeas review pursuant to the adequate and independent state ground doctrine. See, e.g., Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007) (recognizing New York's contemporaneous objection rule as an adequate and independent state ground barring habeas review); Switzer v. Graham, 2010 WL 1543855, *4 (W.D.N.Y. Apr. 16, 2010).

**2.   Introduction of Allegedly Perjured Testimony**

Petitioner contends that the prosecutor knowingly introduced perjured testimony. Petitioner first raised this contention in his CPL 440.10 motion. In his federal petition, he claims that Huff's

12

testimony was false, arguing that certain prior allegedly inconsistent statements prove its falsity. Specifically, petitioner contends that one police report noted that Huff "did not see anything regarding the shooting" (Doc. 1 at 41), and another stated that Huff learned from a cousin that "the person responsible for the shooting is called 'Southboy.'" Id.

Initially, the Court notes that petitioner makes much of Huff's testimony that she "saw" the shooting, arguing that because Huff testified that she did not actually see the gun being fired, she did not "see" the crime. Petitioner's overly technical characterization of Huff's testimony does not support an argument that her testimony was false. Huff testified that she saw petitioner exit his vehicle holding a large silver gun and approach the driver's side of Joseph's vehicle, at which point she heard five or six gunshots. She then saw petitioner run back to his van and drive away. In Huff's account, petitioner was within her view during this entire time period. On cross examination, Huff reiterated this story, and upon questioning, clarified that she did not actually *see* the gun fired, but that she "[saw] the gun, and [] heard the gunshots." T. 359. Considering the entirety of Huff's testimony, it can hardly be said that the prosecutor's characterization of Huff's testimony, in which he commented that Huff had witnessed the murders, was improper.

Under a due process analysis, a conviction must be set aside where "(1) 'the prosecution knew, or should have known, of the

13

perjury,' and (2) 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Drake v. Portuondo, 321 F.3d 338, 345 (2d Cir. 2003) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976) (citing Napue v. Illinois, 360 U.S. 264, 269 (1959)). "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir.2001) (citation omitted).

Defendant has put forth no proof that Huff committed perjury (let alone that the prosecutor should have known about the same). Rather, petitioner's contentions take issue with minor inconsistencies between initial police reports paraphrasing Huff's statements and Huff's ultimate trial testimony. There is no indication in the record that any of Huff's statements at trial were false, and petitioner has submitted no proof of falsity. Therefore, with no evidence of false testimony, petitioner's claim fails. See, e.g., Black v. Rock, 2015 WL 2120516, *11 (E.D.N.Y. May 6, 2015) (finding no proof of perjured testimony where petitioner pointed only to minor inconsistencies between the testimony and other proof at trial); Dinsio v. Donnelly, 2007 WL 4029221, *5 (N.D.N.Y. Nov. 15, 2007) (finding no proof of perjury where testimony was contradicted by inconsistencies with grand jury testimony and police dispatch records). Considering petitioner's

14

allegations, the state courts' denial of his CPL 440.10 motion cannot be said to have been based on an unreasonable application of applicable federal law.

### C. Right to Be Present at All Material Stages of Trial (Ground Three)

Petitioner claims that the following exchange between the prosecutor and the trial judge, which occurred prior to trial and outside the presence of defendant and defense counsel, denied him the right to be present at all material stages of trial:

> [Assistant District Attorney]: I don't want to make this an ex parte communication, but I think I have to put the Court on in the. [*sic*] There is one evidentiary issue that is slightly irregular, which I really don't want to tip off to the Defense – sort of a Hobson's choice. I don't want to mislead the Court, but at the same time, I don't want to tip off this issue to the Defense. If you would like, I will tell you what it is so you can research it if you think it's necessary, but I don't want to say something that could be construed as improper with the Defendant not here and the Defendant's Counsel not here.
>
> THE COURT: It's more for the Court's benefit than anything else. Why don't you make a brief record of the possible issue.
>
> [ADA]: The testimony is going to include the unique characteristic that the Defendant had a mouth full of gold teeth. At some point during the trial, depending on the circumstances, in all likelihood, I would request that the Defendant be asked to present that to the jury. I am sure it's an issue that you have come across, but in case --
>
> THE COURT: It's not an unusual issue. The Court has ordered Defendants in the past to display various parts of their body.
>
> [ADA]: I didn't want to mislead you and you say, "why didn't you tell me?"

> THE COURT: I understand. You're aware I do like to have these things dealt with. That is what I consider a fairly routine issue which comes up regularly. Thank you, Mr. Rizzo.

June 15, 2007 Transcript at 17-19.[2] During direct examination of Investigator Randall Benjamin, after the investigator testified that he observed petitioner's gold teethk, the prosecutor asked that the court direct petitioner to approach the jury and display his teeth. The judge granted this request over defense counsel's objection.

On direct appeal, the Appellate Division rejected petitioner's argument, noting that "[t]he Fifth Amendment privilege against self-incrimination does not preclude a defendant from being required to reveal the physical characteristics of his or her body." Hill, 82 A.D.3d at 1716 (citing People v Havrish, 8 N.Y.3d 389, 393 (2007), cert denied 552 U.S. 886; People v Slavin, 1 N.Y.3d 392, 398 (2004), cert denied 543 US 818). The Appellate Division also noted that there is no "requirement that the prosecutor provide defendant with pretrial notice of the intent to use such evidence," and that as a result, "the discussion between the prosecutor and the court regarding that issue was 'not only noncritical[] but [was], as a matter of law, unnecessary'" Id. at 1716-17 (citing People v Holmes, 304 A.D.2d 1043, 1044 (2003), lv denied 100 N.Y.2d 642). The Appellate Division's decision on this

---

[2] Page 17 of this transcript is missing from the record before the Court. However, petitioner (who has filed a traverse in response to respondent's brief) does not dispute that this is the exchange that occurred between the prosecutor and the trial judge.

16

issue constituted an accurate application of federal law, and therefore, petitioner's claim lacks merit.

### D.  Admission of Morgue Photos (Ground Four)

Petitioner contends that the introduction of morgue photos of both victims violated his right to a fair trial because it served merely to inflame the passions of the jury. On direct appeal, the Appellate Division held that the photographs were relevant to prove the identity of the victims. Hill, 82 A.D.3d at 1717.

In order to elevate this alleged error in the admission of evidence in the state court proceeding to the level of a constitutional deprivation, Hill must show that the error violated a specific constitutional provision. United State ex rel. Holliday v. Adams, 443 F.2d 7, 8 n.1 (2d Cir. 1971) (per curiam). To meet this burden, Hill contends that the introduction of the photographs deprived him of due process and a fair trial.

Under well-established New York law, the trial court has discretion as to whether to introduce photographs of homicide victims. See People v. Wood, 79 N.Y.2d 958 (1992). ("The general rule is . . . [that] photographs are admissible if they tend 'to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered.' They should be excluded 'only if [their] sole purpose is to arouse the emotions of the jury and to prejudice the defendant[.]' ") (quoting People v. Pobliner, 32 N.Y.2d 356, 369–70 (1973)). "[P]hotographs of a corpse

17

are admissible even though they portray a gruesome spectacle and may tend to arouse passion and resentment against the defendant in the minds of the jury." Pobliner, 32 N.Y.2d at 369-70 (internal quotation marks omitted).

Bar owner James Pizzicato identified Joseph (a/k/a "Fleet) via a morgue photograph, which was admitted over counsel's objection. Counsel argued that the photograph was being "introduced solely to inflame the passions of the jury." T. 313. Huff also identified Joseph through this photograph. She then identified Crawford through a separate morgue photograph. After initially objecting, then conferring off the record with the prosecutor, defense counsel conceded to the photo of Crawford being admitted for identification purposes only. There is no indication that the trial court allowed these photographs into evidence for any purpose other than proper identification of the victims, which was a critical issue in this trial. Thus, based on a review of the record, petitioner has failed to demonstrate any error of state evidentiary law. See Morgan v. Rock, 2010 WL 3703697, *3-4 (W.D.N.Y. Sept. 16, 2010). Because there was no error, petitioner was not denied a fair trial.

## **CONCLUSION**

For the foregoing reasons, petitioner's request for writ of habeas corpus is denied, and the petition (Doc. 1) is dismissed. Because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the

Court declines to issue a certificate of appealability. The Clerk of the Court is requested to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                             **S/Michael A. Telesca**

                                         HON. MICHAEL A. TELESCA
                                  United States District Judge

Dated:  September 28, 2015
        Rochester, New York.